UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERARDO BARRIOS,<br><br>        Plaintiff,<br><br>vs.<br><br>HAROLD TATE, M.D., *et al.*,<br><br>        Defendants. | Case No. 1:16-cv-00562-RRB<br><br>**<u>DISMISSAL ORDER</u>** |

Jerardo Barrios, a California state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action under 42 U.S.C. § 1983 against Harold Tate, M.D.[1] Barrios' claim arises out of his incarceration in the Special Housing Unit ("SHU") at the California Correctional Institution–Tehachapi ("CCI"). Barrios is currently incarcerated at the Calipatria State Prison.

**I.     SCREENING REQUIREMENT**

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2] This Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that

---

[1] In addition to Dr. Tate, Barrios names as Defendants in this action: S. Shiesha, M.D., Chief Medical Executive CCI; V. Baniga, M.D., Chief Physician & Surgeon CCI; and J. Lewis, Deputy Director Policy & Risk Management Services, California Health Care Services.

[2] 28 U.S.C. § 1915A(a).

"seeks monetary relief against a defendant who is immune from such relief."[3] Likewise, a prisoner must exhaust all administrative remedies as may be available,[4] irrespective of whether those administrative remedies provide for monetary relief.[5]

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[6] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[7] Failure to state a claim under § 1915A incorporates the familiar standard applied in Federal Rule of Civil Procedure 12(b)(6), including the rule that complaints filed by *pro se* prisoners are to be liberally construed, affording the prisoner the benefit of any doubt, and dismissal should be granted only where it appears beyond doubt that the plaintiff can plead no facts in support of his claim that would entitle him or her to relief.[8] This requires the presentation of factual allegations sufficient to state a plausible claim for

---

[3] 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c); see *Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

[4] 42 U.S.C. § 1997e(a); see *Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006) ("proper exhaustion" under § 1997e(a) is mandatory and requires proper adherence to administrative procedural rules); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (exhaustion of administrative remedies must be completed before filing suit).

[5] See *Booth*, 532 U.S. at 734.

[6] Fed. R. Civ. P. 8(a)(2).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

[8] *Wilhelm v. Rotham*, 680 F.3d 1113, 1121 (9th Cir. 2012).

relief.[9]  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"[10]  Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.[11]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[12]

## II.   GRAVAMEN OF COMPLAINT

<u>July 2, 2014</u>.  While housed in the SHU at CCI Barrios injured his right knee, ankle, and foot in a fall.

<u>July 10, 2014</u>:  Barrios submitted a health care request.

<u>July 11, 2014</u>.  Dr. Tate ordered x-rays of the ankle and foot, but no x-rays were taken of the knee. The x-rays were reviewed and found "no acute fracture or dislocation."[13] At the request of Barrios examined Barrios' knee. Dr. Tate then prescribed ibuprofen for the pain and sent Barrios back to his housing unit.

<u>July 15, 2014</u>.  Dr. Tate diagnosed Barrios with:  (1) possible ligament derangement of right foot; and (2) right knee strain.  In the Progress Notes Dr. Tate noted:

> Extremities: moderate swelling of the right foot and lower Leg without heat; there is moderate bruising of the right great toe and along the medial right foot from the right

---

[9] *Iqbal*, 556 U.S. at 678–79; *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Twombly*).

[10] *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[11] *Id.*

[12] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[13] Complaint, p. 21 (Exh. B).  This report was signed by R. Waters, MD.

> toe through the mid· foot; flexion of the right knee is from 15° of flexion to 100° of flexion; the right knee could not be adequately examined because the inmate could /would not relax his thigh muscles; there was no obvious right knee effusion or ligamentous laxity
> 11 11 Jul '14: X·ray pf the right foot shows no acute fractures
>
> Dr. Tate prescribed:
>
> 1. Repeat x-ray of right foot
> 2. Continue naproxen 250 mg BIO
> 3. Inmate counseled to elevate right foot as much as possible while in the cell
> 4. Will cast the foot if no improvement this week
> 5. Lower bunk
> 6. RTC 7 to 10 days[14]

July 24, 2014.  Dr. Tate diagnosed Barrios with:  (1) possible ligament derangement of right foot; (2) right knee strain; and (3) tinea pedis mocassin type.  Dr. Tate noted:

> Extremities:  there is mild-to-moderate erythema of the right lower extremity from the knee downwards without heat; mild tinea pedis mocassin type is present; mild edema is present over the dorsal right foot halfway up the leg
> Right Knee:  patient tenses the knee flexors and extensors so that range of motion cannot be determined; Patellar Grinding, Lachman's and McMurrray's Tests are all negative; there is moderate laxity of the femoro-tibial and femoro-fibular ligaments
> Right Ankle:  there is no heat in the joint; Drawer Test is negative; ankle flexion, extension, inversion and eversion are all WNL
> X-ray of the right foot and ankle are without bony abnormality
>
> Dr. Tate prescribed:
>
> 1. A 7243 RFS is submitted for MRI of the right ankle (InterQual consulted)
> 2. Add ranitidine 150 mg BID for GI protection
> 3. Continue elevation and non-weight-bearing as much as possible ,
> 4. Clotrimazole 1% Topical Cream BID
> 5. RTC 15 to 30 days[15]

---

[14] Complaint, p. 50 (Exh. I).

[15] *Id.*, p. 51.

<u>August 13, 2014</u>.  Dr. Tate diagnosed:  (1) possible ligament derangement of the right foot; (2) right knee strain; and (3) tinea pedis mocassin type.  Dr. Tate noted:

> Extremities: there is mild erythema of the right lower extremity from the knee downwards without heat; mild tinea pedis mocassin type is present; slight edema is present over the dorsal right foot halfway up the leg Right Knee: patient tenses the knee extensors so that range of motion cannot be determined; Patellar Grinding, Lachman's and McMurrray's Tests are all negative; there is mild laxity of the femoro-tibial ligament Right Ankle: there is no. heat in the joint; Drawer Test is negative; ankle flexion, extension, inversion and eversion are all WNL
> 11 Jul '14 & 15 Jul '14: X·rays of the right foot and ankle are without bony abnormality
>
> In Part A Dr. Tate stated:
>
> 1.  Appellant's request to be assigned to another doctor is beyond the scope of a 602 Appeal and is DENIED
> 2.  Appellant's request for an MRI of both the right foot and ankle is medically unnecessary since the femoro· fibular ligament appears to have markedly improved; an MRI of the right ankle was requested by RFS on 24 Jul '14 and thus Appellant's request for an MRI is PARTIALLY GRANTED
> 3.  Appellant's request for stronger pain medication is GRANTED in that the dose of naproxen will be doubled from 250 mg to 500 mg BID
> 4.  Possible ligament derangement of the right foot
> 5.  Right Knee Strain
> 6   Tinea Pedis Mocassin Type
>
> Dr. Tate concluded:
>
> 1.  This Appeal is PARTIALLY GRANTED at the First Level of Review
> 2.  Await processing of the 7243 RFS
> 3.  Continue elevation and.non·weight·bearing as much as possible
> 4.  Refer Appellant for Physical Therapy for strengthening and gait training
> 5.  RTC 30 to 45 days[16]

<u>August 14, 2014</u>.  Dr. Baniga responded to Barrios CDCR-602HC Inmate/Parolee Health Care Appeal at the first level.

---

[16]  *Id.*, p. 52 (Exh I).

The First Level Appeal, received on 7/31/2014 stated that you have seen the doctor regarding pain in your knee, ankle, and foot. You stated that the doctor focused on your foot only and your knee and ankle are still in severe pain. You also stated you were never called for a follow up appointment and your knee and ankle are still in excruciating pain. You requested to be assigned to a different Doctor, to have an MRI of your knee and ankle, and to be prescribed stronger pain medication.
During the interview you attended on 08/13/2014, your Primary Care Provider (PCP) thoroughly reviewed your case history and performed an assessment of your medical condition. Based on the results, your PCP noted that inmates are assigned their provider based on CDC number and housing in accordance with policy; as such, your request for a different provider is denied. It is noted that an MRI of both your knee and ankle are medically unnecessary however an MRI for your ankle was requested by referral on 07/24/2014; partially granting your request. Your prescription for naproxen will be doubled for 250 mg to 500 mg; granting your request for stronger pain medication.[17]

August 22, 2014.  Barrios' knee was x-rayed, which x-ray found:

FINDINGS:
Fragmentation Involves the medial tibial plateau consistent with old tibial plateau fracture.
No acute fracture or joint effusion.
Joint spacing Is preserved.

IMPRESSION:
Old medial tibial plateau fracture.[18]

September 3, 2014.  An MRI was performed on Barrios' right knee, which found:

FINDINGS: An old medial tibial plateau fracture is present with nonunion. An associated tear of the posterior horn of the medial meniscus is present.
Moderate degenerative changes are present within the medial compartment with diffuse cartilage loss. ·
The lateral meniscus appears intact.
The anterior cruciate, posterior cruciate, medial collateral, lateral collateral, and patellar ligaments appear intact. The visualized portion of the quadriceps tendon is unremarkable.

---

[17] Complaint, p. 26 (Exh. C).

[18] Complaint, p. 31 (Exh. D).  Report electronically signed by R. Waters MD.

> Mild chondromalacia is present at the patellofemoral joint. The signal within the visualized marrow appears to be within normal limits.
> No joint effusion or popliteal cyst is seen.
> IMPRESSION:
> 1. Old fracture of the medial tibial plateau with nonunion.
> 2. Tear of the posterior horn of the medial meniscus.
> 3. Moderate degenerative changes within the medial compartment.[19]

<u>September 4, 2014</u>.   Dr. Shiesha responded to Barrios CDCR-602HC Inmate/Parolee Health Care Appeal at the second level.

> The First Level Appeal, received on 7/31/2014, stated that you have seen the doctor regarding pain in your knee, ankle, and foot. You stated that the doctor focused on your foot only and your knee and ankle are still in severe pain. You also stated you were never called for a follow up appointment and your knee and ankle are still in excruciating pain. You requested to be assigned to a different doctor, to have an MRI of your knee and ankle, and to be prescribed stronger pain medication.
> During the interview you attended on 08/13/2014, your Primary Care Provider (PCP) thoroughly reviewed your case history and performed an assessment or your medical condition. Based on the results, your PCP noted that inmates are assigned their provider based on CDC number and housing in accordance with policy; as such, your request for a different provider is denied. It is noted that an MRI of both your knee and ankle are medically unnecessary; however, an MRI for your ankle was requested by referral on 07/24/2014; partially granting your request. Your prescription for naproxcn will be doubled for 250 mg to 500 mg; granting your request for stronger pain medication.
> At the First Level of Review this appeal was Partially Granted.
> In the Second Level Appeal, received on 9/4/2014, you stated that you are satisfied with the approval for an MRI on your ankle/foot; however, you are dissatisfied with the denial of an MRI on your knee. You stated that your knee is very much in pain and if your request had been accepted by your doctor you could have had an MRI on your knee when the MRI was done on your ankle/foot. You stated that now you will have to wait to get another MRI and the pain medication does not do much for the pain but you would rather take it than nothing.
> Your issues were carefully reviewed at the Second Level; however, no new information was presented which warrants modification of the First Level Appeal Decision. The CCR, Title 15, Section 3350(a) establishes that the

---

[19] *Id.*, p. 33.  Report electronically signed by D. Goller MD.

> Department shall provide medical services for inmates based on medical necessity, supported by outcome data and based on the judgment or the physician. You may not demand particular medication, diagnostic evaluation, or course of treatment. The CCR, Title 5, Section 3354 *Health Care Responsibilities and Limitation,* (a) *Authorized Staff,* states, "Only facility-employed health care staff, contractors paid lo perform health services for the facility, or persons employed as health care consultants shall be permitted within the scope of their licensure to diagnose illness or prescribe medication and health care treatment for inmates. No other personnel or inmate may do so." You have been seen and treated as deemed appropriate by your PCP for your current medical conditions. You will continue to receive proper treatment. Should your treatment regimen be modified-to include further diagnostics or medication changes-it will he done at the discretion of your provider based on outcome data and Department policy. Should you need to be seen prior to your next scheduled appointment, you may submit a CDCR 7362 *Health Care Services Request Form* to medical staff.[20]

<u>September 17, 2014</u>.  Dr. Tate diagnosed: (1) an old fracture of the right tibia; (2) sprain of the right knee and foot; and (3) tinea Pedis Mocassin type.  In the Progress Note Dr. Tate noted:

> Extremities: there is no heat, redness or swelling of the right lower extremity; range of movement is full extension to 100' of flexion; the femoro·tibial ligament is mildly lax with mild tenderness to palpation; all other ligaments are intact; there is no effusion
> Right Ankle: there is no heat; Drawer Test is negative; ankle flexion, extension, inversion and eversion are all WNL
> 03 Sep '14: MRI of the Right Knee shows and [*sic*] old fracture of the medial tibial plateau with non-union, a tear of the posterior horn of the medial meniscus, and moderate degenerative changes of the medial compartment MRI of the Right Foot &. Ankle is not on file in the eUHR

> In Part A Dr. Tate stated:

> 1.  Appellant's request for results of an MRI of his right foot is DEFERRED until the result is filed, but will be GRANTED
> 2.  Appellant's request for Orthopedic referral and management Is not medically necessary and is DENIED since surgical intervention does not appear warranted for an old injury

---

[20]  Complaint, pp. 27-28 (Exh. C).

DISMISSAL ORDER
*Barrios v. Tate*, 1:16-cv-00562-RRRB – 8

3.  Appellant's request for reassignment to another Primary Care Physician is beyond the scope of a 602 Medical Appeal and is DENIED since inmates cannot choose their own physicians
4.  Appellant's request for adjustment of his pain medications is GRANTED in that oxcarbazeptne 300 mg BID will be added to ibuprofen
5.  Appellant's request for "proper" treatment of his musculoskeletal injuries is GRANTED since he is and has been under a Physician's supervision since his injury
6.  Appellant's request for a knee brace is medically unnecessary since "most braces of elastic or leather with hinges are of little value" (Practical Orthopedics, Fourth Edition, Mosby Publishing, 1995; pg 218, Fig 11-17)
7.  Old Fracture of the Right Medial Tibial Plateau with Non-Union and Degenerative Changes
8.  Right Medial Meniscus Tear
9.  Right Foot Sprain
10.  Tinea Pedis Mocassin Type

Dr. Tate then concluded:

1.  This Appeal is PARTIALLY GRANTED at the First Level of Review
2.  Continue ibuprofen 400 mg TIO PRN and add oxcarbazepine 300 mg BID for pain management
3.  Await report of MRI of right ankle
4.  Physical Therapy referral
5.  RTC 60 - 90 days[21]

<u>September 28, 2014</u>.  Barrios was transferred to Pelican Bay State Prison.

<u>April 21, 2015</u>.  By correspondence to the Third Level of Review Barrios submitted a request that he be permitted to file his appeal from the Second Level Decision untimely.[22] Although shown as received by the Health Care Appeals Board on July 3, 2015, it does not appear from the documents attached to the Complaint what action, if any, was taken on Barrios' request.  However, as noted above, Barrios does affirmatively allege it was denied.

---

[21] Complaint, pp. 34–35 (Exh. D).

[22] Complaint, p. 29 (Exh. C).

After his transfer to Pelican Bay Barrios was seen by an orthopedic specialist who performed a partial knee replacement on June 10, 2015. Barrios alleges that, although after his surgery his pain diminished, his mobility is still impaired as he is unable to do a complete squat.  Barrios contends that this continued impairment is as a result of Dr. Tate's failure to properly diagnose the fracture of Barrios' knee.  Barrios contends that the actions of the Defendants constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment right to be free from cruel and unusual punishment.

## III.   DISCUSSION

The Supreme Court, holding that the infliction of unnecessary suffering on prisoners violated the Eighth Amendment, stated:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.[23]

In *Estelle* the Supreme Court distinguished "deliberate indifference to serious medical needs of prisoners," from "negligen[ce] in diagnosing or treating a medical condition,"

---

[23]   *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976) (footnotes, internal quotation marks and citations omitted).

holding that only the former violates the Constitution.[24] In short, Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety."[25]

In determining deliberate indifference, the court scrutinizes the particular facts and looks for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect.[26] The Ninth Circuit has spoken to the subject of the appropriate test under *Estelle*:

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Yet, an inadvertent [or negligent] failure to provide adequate medical care alone does not state a claim under § 1983. A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. If the harm is an isolated exception to the defendant's overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.[27]

A defendant must purposely ignore or fail to respond to a prisoner's pain or medical need in order for deliberate indifference to be established. Where the claim is based upon

---

[24] *Id.* at 106.

[25] *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

[26] *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

[27] *Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir. 2006) (alterations in the original; internal quotation marks and citations omitted).

delay in providing a specified treatment, a prisoner has no claim for deliberate medical indifference unless the delay was harmful.[28]

To make a claim, Plaintiff must show that Defendants exhibited "deliberate indifference to serious medical needs."[29]  Such a showing is sufficient to demonstrate the "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."[30]  The Constitution "does not necessitate comfortable prisons,"[31] nor is the Eighth Amendment a mandate for "broad prison reform" or excessive federal judicial involvement.[32]  However, the Eighth Amendment does not permit inhumane conditions, and prison conditions are subject to scrutiny under its provisions.[33]

"Deliberate indifference is a high legal standard.  A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth

---

[28]  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

[29]  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

[30]  *Id*. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)) (internal quotation marks and citation omitted)).

[31]  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981))

[32]  *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) (*abrogated on other grounds by Sandlin v.  O'Connor*, 515 U.S. 472 (1995)).

[33]  *Farmer*, 511 U.S. at 832.

Amendment."[34]  A mere difference of medical opinion regarding the course of medical treatment is "insufficient as a matter of law, to establish deliberate indifference."[35]

As against Drs. Baniga and Shiesha the Court's review of the record indicates that the relief Barrios requested, an MRI on his knee, was granted on September 3, 2014. How, either Dr. Baniga or Dr. Shiesha somehow disregarded Barrios' serious medical needs escape logical explanation.  With respect to J. Lewis, Barrios simply alleges that he denied Barrios' serious medical needs. The Court assumes that this was the Third Level appeal.  Accordingly, it suffers the same infirmity as do the allegations against the doctors. Therefore, the Complaint as against them must be dismissed for failure to state a claim upon which relief may be granted.

The allegations against Dr. Tate stand on a different footing.  Specifically, Barrios contends that he was told by Dr. Tate that:

> [. . .] I had an "old fracture" on my tibia and a tear on my meniscus and some loose fragments.  This information is to be true, Dr. Tate even went as far as to convince plaintiff that fracture happened years past, even asked questions about if I ever broken my tibia which he insinuated it happened many years ago.  Plaintiff mentioned to Dr. Tate that the fracture looks old because he (Dr. Tate) ignored plaintiff many requests and took so long to x-ray and MRI plaintiff right knee and since then had healed. Plaintiff was

---

[34] *Toguchi v. Chung*, 391 F. 3d 1051, 1060 (9th Cir. 2004); *see Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (stating that even gross negligence is insufficient to establish a constitutional violation); *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam) (noting mere indifference, medical malpractice, or negligence do not support a cause of action under the Eighth Amendment).

[35] *Toguchi*, 391 F.3d at 1059–60 (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)); *Franklin v. State of Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (noting, also, that a disagreement between a prisoner and a medical professional over the most appropriate course of treatment cannot give rise to a viable claim of deliberate indifference).

never informed that the fracture did not heal properly or extent of damage caused by Dr. Tate inadequate medical care.[36]

It is clear from the Complaint taken as a whole that, in advising Barrios concerning the nature of the injury to Barrios' knee, Dr. Tate was referring to the September 3 MRI report authored by Dr. Goller that, as relevant to the Complaint, specifically found an "[o]ld fracture of the of the medial tibial plateau with nonunion" and "moderate degenerative changes within the medial compartment."[37] Dr. Tate's reliance upon the radiologist's report clearly does not rise to the level of deliberate indifference. Furthermore, other than his bare conclusory allegation, Barrios has failed to allege that the current limitations on his mobility are in any way related to a failure to properly diagnosis a fracture, even if such failure did in fact occur.  Indeed, the very exhibits upon which Barrios relies eviscerate his claims.

On January 7, 2015, Barrios was seen by telemedicine by Richard Cross, M.D.  In his report, Dr. Cross stated:

> On examination via telemedicine it is obvious that this knee has an effusion and he has pain with flexion max beyond 120 degrees.  I am not able to test his cruciate or collateral ligaments obviously via telemedicine but there is obvious evidence of internal derangement in the form of a chronic effusion which needs to he evaluated more thoroughly.  Therefore, I will recommend and request a standard MRI study of this left knee looking for internal derangement.[38]

A MRI was conducted on March 2, 2015, which, as relevant to this action, showed: "Focal avulsion fracture is identified the medial tibial plateau, with slight medial

---

[36] Complaint, ¶ 14, pp. 12–13.

[37] Complaint, p. 33 (Exh. D).  Report electronically signed by D. Goller MD.

[38] Complaint, p. 43 (Exh. G).  Electronically signed by Richard Cross M.D.

displacement. Edema at the medial tibial plateau consistent with contusion/non-displaced fracture."[39] On March 23, after reviewing the MRI Report, Dr. Cross reported:

> The MRI reveals significant degenerative joint disease isolating primarily to his medial compartment. On telemedicine conference it was evident that his pain was at least 90% isolated at the medial compartment. He had mild varus deformity and no significant flexation contracture. He appears to have stable exam. MRI shows cruciate and collateral ligaments intact. After evaluating this patient it appears as though he is an excellent candidate for partial knee replacement and therefore we will respectfully request authorization for this surgery.[40]

As noted above, Barrios received this surgery on June 10, 2015. Notably, nothing in Dr. Cross's report refers directly, indirectly, or even inferentially, to the alleged "fracture" of the knee cap. As relevant to the Complaint, the difference is with respect to the degree of the degenerative changes of the medial compartment—deemed "moderate" by Dr. Goller (accepted by Dr. Tate), but "significant" by Dr. Cross. In short, the sole logical conclusion that a trier of fact could reach on the evidence pleaded is that Barrios' continued impairment is as a result of a degenerative condition, not an untreated fracture.

## IV.   CONCLUSION/ORDER

Taken as a whole and in proper context, Barrios' allegations against Dr. Tate more likely than not do not even rise to the level of medical malpractice, let alone deliberate indifference. Section 1983 does not provide a cause of action for medical malpractice claims.[41] Thus, even if Dr. Tate's "error" did rise to the level of medical malpractice, it would

---

[39] *Id.*, p. 45 (Exh. G). Signed by Martin Kernberg, MD.

[40] *Id.*, p. 47 (Exh. G).

[41] *Loftis v. Almagar*, 704 F.3d 645, 647 (9th Cir. 2012) (*citing Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

constitute a violation of state, not Federal, law. To the extent that Barrios may plead a claim under California law, the Court declines to exercise jurisdiction over such a claim.[42]

Therefore, the Complaint is hereby **DISMISSED** in its entirety as against all Defendants.  Normally, the Court would grant Plaintiff leave to file an amended complaint. In this case it is plainly evident that Barrrios cannot truthfully plead a viable cause of action under Federal law based upon the medical treatment received while incarcerated at the California Correctional Institution–Tehachapi. Accordingly, dismissal is without leave to amend.[43]

This Court, having fully considered the matter finds that reasonable jurists could not disagree with this Court's resolution of Plaintiff's constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Therefore, any appeal would be frivolous or taken in bad faith.[44] Plaintiff's *in forma pauperis* status is hereby **REVOKED**.

---

[42] "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . .." 28 U.S.C. § 1367(c).

[43] *See Hartman v. California Dept. of Corr. and Rehab.*, 707 F.3d 1141, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."); *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (explaining that leave to amend should be given unless amendment would be futile).

[44] 28 U.S.C. § 1915(a)(3);  *see Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002).

The Clerk of the Court is directed to enter judgment of dismissal without prejudice to bringing an action under otherwise applicable state law in the appropriate California state court.

**IT IS SO ORDERED** this 24th day of June, 2016.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE